[No. B237553. Second Dist., Div. Two. May 22, 2012.]

In re Gabriel G., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
David G. et al., Defendants and Appellants.

COUNSEL

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant David G.

Marsha F. Levine, under appointment by the Court of Appeal, for Defendant and Appellant A.P.

John F. Krattli, Acting County Counsel, James M. Owens, Assistant County Counsel, and Kim Nemoy, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

## OPINION

**DOI TODD, Acting P. J.**—Appellants David G. (father) and A.P. (mother) appeal from the order terminating their parental rights to their son Gabriel G. (nearly two years old). The sole issue on appeal is whether the juvenile court complied with the requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) before terminating parental rights. We find that the trial court did not, and conditionally reverse the order for the limited purpose of providing ICWA notice.

### FACTUAL AND PROCEDURAL BACKGROUND

In June 2010, the Los Angeles County Department of Children and Family Services (the Department) filed a petition under section 300 of the Welfare and Institutions Code[1] on behalf of newborn Gabriel. As sustained, the petition

---

[1] All statutory references are to the Welfare and Institutions Code, unless otherwise noted.

alleged that Gabriel's brother had died at the age of six months while sleeping in the same bed as appellants, who were heavily under the influence of alcohol; appellants had a history of domestic violence; and father had failed to provide for Gabriel.

At the detention hearing on June 14, 2010, the court ordered Gabriel detained and placed in the Department's care and custody. Mother denied having any Native American heritage, and the court found the matter was not governed by the ICWA as to mother. Father's whereabouts were unknown. Mother indicated that father was listed on Gabriel's birth certificate and present for his birth. The court deemed father an alleged father and ordered the Department to obtain Gabriel's birth certificate.

At the jurisdiction and disposition hearing on July 26, 2010, father's whereabouts remained unknown. The court declared Gabriel a dependent child and ordered that he remain in the Department's custody. The court stated that it had previously found the matter was not subject to the ICWA. The court ordered reunification services for mother only, and that she undergo drug rehabilitation with weekly drug testing, counseling and parent education.

The court held the six-month review hearing on January 24, 2011. In its report prepared for the hearing, the Department requested the court to make an ICWA finding as to father. Father had been located in county jail and made his first appearance in custody. He was appointed counsel, who filed a "Statement Regarding Parentage," which indicated that father had already signed a voluntary declaration of paternity. The form was signed by father's attorney but not by father. Father's attorney also filed a "Parental Notification of Indian Status" (ICWA-020 form), which indicated that the paternal grandfather, Gasper G., "is or was a member" of a "Cherokee" tribe. The form was not signed by father or his attorney.

Father's attorney advised the court that father wanted to be declared Gabriel's presumed father but stated, "However, I do understand that the criteria would not be met because the child was removed from the mother's care." The court responded, "Right, and [father] has been incarcerated ever since. I am not going to change the status. He remains an alleged father, and since he is an alleged father . . . I don't need to consider the ICWA status either."[2]

---

[2] As father points out, it appears that both the court and his attorney were unaware that a properly executed and filed declaration of paternity "shall establish the paternity of a child and shall have the same force and effect as a judgment for paternity issued by a court of competent jurisdiction." (Fam. Code, § 7573.) A voluntary declaration of paternity entitles the man who signed it to presumed father status. (Fam. Code, § 7611; *In re Christopher M.* (2003) 113

For the 12-month review hearing on July 25, 2011, the Department reported the social worker had interviewed father in custody on July 12, and father had "stated that he did not have any Indian heritage." Again, the Department requested the court make an ICWA finding as to father. Father was present at the hearing with his appointed counsel, but the court did not question him regarding his Indian heritage or make any ICWA finding as to father. The court found mother's progress with her case plan was minimal, terminated her reunification services, and set the matter for a section 366.26 selection and implementation hearing.

Both parents were present for the section 366.26 hearing on November 14, 2011. The Department's report for the hearing stated, "Child Welfare Act did not apply as to Gabriel." The court stated that it had read and considered the Department's report. A copy of Gabriel's birth certificate was attached to the report and listed father as the biological father.[3] The copy of the birth certificate reflects that it was prepared by the County of Los Angeles Registrar-Recorder/County Clerk's Office on July 22, 2010, which was four days prior to the disposition hearing. The court made no specific ICWA finding as to father. The court found Gabriel was likely to be adopted and terminated parental rights. Both parents filed notices of appeal.[4]

## DISCUSSION

### I. ICWA

■ Congress passed the ICWA in 1978 "to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children 'in foster or adoptive homes which will reflect the unique values of Indian culture . . . .' " (In re Levi U. (2000) 78 Cal.App.4th 191, 195 [92 Cal.Rptr.2d 648]; see 25 U.S.C. § 1902.) The party seeking termination of parental rights must notify the Indian child's tribe of the pending proceedings and its right to intervene. (In re Desiree F. (2000) 83 Cal.App.4th 460, 469 [99 Cal.Rptr.2d 688]; 25 U.S.C. § 1912(a).)

---

Cal.App.4th 155, 161 [6 Cal.Rptr.3d 197]; In re J.L. (2008) 159 Cal.App.4th 1010, 1023 [72 Cal.Rptr.3d 27]; In re Liam L. (2000) 84 Cal.App.4th 739, 747 [101 Cal.Rptr.2d 13]; Cal. Rules of Court, rule 5.635(c).)

[3] The juvenile court stated at the hearing, "I have a birth certificate." Father assumes the court was referring to Gabriel's birth certificate, but the Department had also submitted a birth certificate for Gabriel's half sister, Y.P., who has a different father and who is not a party to this appeal. Her case had also been set for a section 366.26 hearing, but the court continued the matter as to Y.P. so that due diligence could be conducted on her father. It appears the court may have been referring to her birth certificate, as the court later ordered the Department to request Gabriel's "birth records if not previously received."

[4] Mother joins in father's opening brief.

The right of a tribe to intervene would be meaningless without notice. Accordingly, the ICWA provides: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary . . . ." (25 U.S.C. § 1912(a).) In 2007, the California Legislature enacted provisions consistent with the ICWA. (See § 224 et seq.)

■ "The determination of a child's Indian status is up to the tribe; therefore, the juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement." (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 848 [131 Cal.Rptr.2d 256]; see Cal. Rules of Court, rule 5.481(a)(5)(A); *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 258 [126 Cal.Rptr.2d 639] [providing exhaustive analysis of the issue and concluding the "minimal showing" required to trigger notice under the ICWA is merely evidence "suggest[ing]" the minor "may" be an Indian].) "Given the interests protected by the [ICWA], the recommendations of the [federal] guidelines, and the requirements of our court rules, the bar is indeed very low to trigger ICWA notice." (*In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1408 [129 Cal.Rptr.2d 15] [finding father's suggestion that child "might" be an Indian child because paternal great-grandparents had unspecified Native American ancestry was enough to trigger notice].)

Section 224.3, subdivision (a) places an "affirmative and continuing duty" on the court and the Department to "inquire whether a child . . . is or may be an Indian child . . . ." If the court or the Department "knows or has reason to know that an Indian child is involved, the social worker . . . is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and extended family members . . . , contacting the Bureau of Indian Affairs . . . [,] the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility." (§ 224.3, subd. (c); see Cal. Rules of Court, rule 5.481(a)(4).) The circumstances that may provide reason to know the child is an Indian child include, but are not limited to, "A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or

private agency, or a member of the child's extended family provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (§ 224.3, subd. (b)(1).)

"Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of section[] . . . 1912 . . . of this title." (25 U.S.C. § 1914.) (See *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 339 [28 Cal.Rptr.3d 495] [non-Indian parent had standing to assert an ICWA notice violation on appeal].) "Case law is clear that the issue of ICWA notice is not waived by the parent's failure to first raise it in the trial court." (*In re Nikki R., supra,* 106 Cal.App.4th at p. 849.)

## II. *The ICWA Was Triggered Here*

██ Father contends that the ICWA was triggered in this case. We agree. First, father correctly argues that Gabriel's birth certificate triggered application of the ICWA because it designated him as the biological father. "The ICWA defines an Indian child as an unmarried person under the age of 18 who is: 1) a member of an Indian tribe; or 2) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4).)" (*Dwayne P. v. Superior Court, supra,* 103 Cal.App.4th at p. 254.) A child may qualify as an Indian child within the meaning of the ICWA even if neither of the child's parents is enrolled in the tribe. (103 Cal.App.4th at p. 254.)[5]

The juvenile court erroneously referred to father as an "alleged" father throughout the proceedings. Although the court ordered the Department to obtain a copy of Gabriel's birth certificate at the first hearing in this case (the detention hearing on June 14, 2010), the Department did not provide the court with a copy of the birth certificate until the section 366.26 hearing on November 14, 2011. The copy of the birth certificate indicates that it was prepared by the county clerk/registrar-recorder's office on July 22, 2010, which was four days prior to the disposition hearing. Yet, there is no explanation for why the Department waited almost 16 months to provide the

---

[5] Father concedes that until his biological parentage was established the requirements of the ICWA were not triggered. (*In re E.G.* (2009) 170 Cal.App.4th 1530, 1533 [88 Cal.Rptr.3d 871].) Health and Safety Code section 102425, subdivision (a)(4) prohibits listing an unmarried father on a child's birth certificate absent a signed voluntary declaration of paternity. (*In re Raphael P.* (2002) 97 Cal.App.4th 716, 737 [118 Cal.Rptr.2d 610]; see fn. 2, *ante* [for legal effect of voluntary declaration of paternity].)

court with the birth certificate. Moreover, the court does not appear to have focused on the birth certificate at the hearing terminating parental rights, as evidenced by the court's order that the Department request Gabriel's birth records. Furthermore, the court failed to make any ICWA finding as to father despite the Department's prior requests that it do so.

Second, father argues that the ICWA was triggered at the six-month hearing (his first appearance) when he filed the ICWA-020 form, which indicated that his father, Gasper G. (paternal grandfather), "is or was a member" of a "Cherokee" tribe. The Department suggests the trial court could ignore this form because it was not signed by father under penalty of perjury. But the record does not disclose the circumstances under which the form was filled out. It may very well have been the case that father's new attorney interviewed him in a holding cell at the juvenile court prior to the hearing and prepared the form on his behalf, and that father was unable to, or inadvertently failed to, sign the form prior to its being filed with the court. As an officer of the court, father's attorney had a duty not to present any false information to the court, and she could not have possibly obtained such specific Indian heritage information without father's input. Moreover, the court accepted the form for filing and never disputed the veracity of the contents, but simply passed on the ICWA issue based on its mistaken belief that father was merely an alleged father. We are satisfied the lack of father's signature on the ICWA-020 form does not render the document ineffective or irrelevant.

The Department argues the juvenile court had no reason to know Gabriel was an Indian child because after father provided the information about his Indian heritage on the ICWA-020 form, the social worker interviewed father in custody and reported father stated that he did not have Indian heritage. But the social worker's representation in the Department's report did not provide any specifics regarding the inquiry he made of father as to his Indian heritage. For example, the social worker did not state whether he limited his inquiry to father's registration in a federally recognized tribe or inquired about the registration status of father's relatives. Nor did the social worker state whether he specifically asked father to elaborate on the information provided in the ICWA-020 form or to explain any discrepancy between its contents and father's statement to the social worker. On the record before us, we cannot discern whether father meant to convey that while he was not a registered member of a Cherokee tribe, his own father was registered.

At a minimum, a conflict in the evidence exists. Under these circumstances, the social worker had a duty of further inquiry. (§ 224.3, subd. (c).)

But there is nothing in the record to indicate the social worker interviewed anyone besides father, such as the paternal grandmother, Margarita L.[6]

■ Likewise, the court had the same "affirmative and continuing duty" to inquire regarding the possible Indian status of the child. (§ 224.3, subd. (a); Cal. Rules of Court, rule 5.481(a); see *In re J.O.* (2009) 178 Cal.App.4th 139, 154 [100 Cal.Rptr.3d 276].) Having received conflicting information, the juvenile court had a duty to further inquire of father, who was present at the 12-month hearing, about his Indian heritage, and certainly before terminating parental rights. (See *In re Jonathan D.* (2001) 92 Cal.App.4th 105, 109–111 [111 Cal.Rptr.2d 628] [minor's possible Indian heritage is not raised too late at the § 366.26 hearing, and notice is mandatory regardless of how late in the proceedings the Indian heritage is uncovered].) In the absence of further inquiry or information that reliably rebutted father's representation that Gabriel has specific Cherokee heritage through the paternal grandfather, notice was required to be sent to the three federally recognized Cherokee tribes prior to the court considering termination of parental rights, since father's claim gave the court "reason to know that an Indian child is involved." (§ 224.3, subd. (d).)

Because the juvenile court failed to ensure compliance with the ICWA requirements, the court's order terminating parental rights must be conditionally reversed.[7] This "does not mean the trial court must go back to square one," but that the court ensures that the ICWA requirements are met. (*In re Suzanna L.* (2002) 104 Cal.App.4th 223, 237 [127 Cal.Rptr.2d 860]; see *In re Francisco W.* (2006) 139 Cal.App.4th 695, 705 [43 Cal.Rptr.3d 171] ["The limited reversal approach is well adapted to dependency cases involving termination of parental rights in which we find the only error is defective ICWA notice."].) "If the only error requiring reversal of the judgment terminating parental rights is defective ICWA notice and it is ultimately determined on remand that the child is not an Indian child, the matter ordinarily should end at that point, allowing the child to achieve stability and permanency in the least protracted fashion the law permits." (*In re Francisco W., supra,* at p. 708.)

---

[6] While the Department's section 366.26 report states, "[o]n 5/24/10, according to the parents' family, the mother and father do not have American Indian Heritage," this is necessarily a reference to mother and the father of Y.P., since Gabriel was not born and detained until the following month.

[7] As mother correctly contends, a reversal of the juvenile court order terminating father's parental rights must also result in a reversal of the order terminating her parental rights. (Cal. Rules of Court, rule 5.725(a)(2) & (g) ["The purpose of termination of parental rights is to free the dependent child for adoption. Therefore, the court must not terminate the rights of only one parent . . ." except under circumstances not present here.].)

## DISPOSITION

The November 14, 2011 order terminating parental rights is reversed and the case is remanded to the juvenile court with directions to order the Department to provide each of the three Cherokee tribes with proper notice of the proceedings under the ICWA. If, after receiving proper notice, no tribe indicates Gabriel is an Indian child within the meaning of the ICWA, then the juvenile court shall reinstate the order terminating parental rights.

Ashmann-Gerst, J., and Chavez, J., concurred.