Filed 2/26/13  In re Jaida H. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re JAIDA H., a Person Coming Under the Juvenile Court Law. | B241947 (Los Angeles County Super. Ct. No. CK85885) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. DESIREE H., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steven Klaif, Juvenile Court Referee.  Reversed and remanded with directions.

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, and Emery El Habiby, Deputy County Counsel, for Plaintiff and Respondent.

**INTRODUCTION**

Mother, Desiree H., appeals from a dependency court order terminating parental rights to her minor child, Jaida H. Her sole contention on appeal is that the Department of Children and Family Services (DCFS) and the dependency court failed to comply with the Indian Child Welfare Act (the ICWA) (25 U.S.C. § 1901 et seq.) before terminating parental rights. DCFS concedes that the requirements of ICWA were not satisfied, and we agree. The judgment is reversed and the case remanded to the dependency court with directions to conduct further inquiry into whether Jaida may have Cherokee ancestry. Should it be concluded that there is not reason to believe Jaida is an Indian child, the order terminating parental rights shall be reinstated.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Background*

Because this appeal concerns only the adequacy of the ICWA notices, we provide only a brief overview of the facts relating to the dependency.

DCFS filed a petition seeking dependency jurisdiction over Jaida under Welfare and Institutions Code section 300, subdivisions (a) and (b), based on Desiree's mental and emotional problems and substance abuse, as well as alleged domestic violence between Desiree and Jaida's father, Bryan P.[1] Bryan completed an ICWA-020 form on December 27, 2010, indicating that he had no Indian

---

[1]  An amended petition was filed on February 9, 2011, listing Matthew A. as a second alleged father, and including additional grounds for jurisdiction under section 300, subdivision (b), based on alleged substance abuse issues on the part of both Matthew and Bryan. Matthew completed an ICWA-020 form on March 21, 2011, denying any known Indian ancestry. Paternity testing determined that Bryan, not Matthew, was Jaida's father, and the court subsequently found that Bryan was the father.

heritage. Desiree completed an ICWA-020 form on the same date indicating that she had Cherokee heritage through her maternal grandfather.

At the December 27, 2010 detention hearing, Desiree's counsel indicated that Desiree may have Cherokee heritage through her maternal grandfather. The court ordered DCFS to contact Desiree and her maternal relatives regarding their possible American Indian heritage, to investigate the claim of Cherokee ancestry, and to provide a supplemental report to the court regarding that investigation, including details about who was interviewed and dates and places of birth of the maternal relatives. The court indicated that, upon receiving this additional information, it would determine whether the ICWA notice requirements were triggered. The court found that the ICWA did not apply as to Bryan.

In its report submitted prior to the jurisdiction and disposition hearing, DCFS recommended that the court find that the ICWA did not apply, because on February 2, 2011, Desiree "reported to DI Hernandez that she did not have any Native American heritage." The report does not reflect that the issue of Desiree's potential Native American heritage was discussed with any of her relatives.

At the May 16, 2011 adjudication hearing, the court amended and sustained allegations in the dependency petition under Welfare and Institutions Code section 300, subdivision (b), as to Desiree and Bryan. The court made no ICWA findings.

In subsequent supplemental reports, DCFS continued to recommend that the court find that the ICWA did not apply as to Desiree. The court terminated reunification services for both parents and subsequently terminated their parental rights. No ICWA notices were sent to Cherokee tribes, and the court never made a finding regarding ICWA applicability as to Desiree.

Desiree timely appealed. Bryan is not a party to the appeal.

3

## DISCUSSION

Desiree contends that the order terminating parental rights must be reversed due to the failure by DCFS and the dependency court to comply with the ICWA's requirements triggered by her representations regarding her potential Cherokee heritage. Desiree contends that limited remand is appropriate so that ICWA notices may be sent to the Cherokee tribes. While DCFS concedes that both it and the dependency court failed to satisfy the ICWA's requirement that they investigate Desiree's potential Native American ancestry, it suggests that further inquiry into her ancestry, short of sending ICWA notices to the Cherokee tribes, may be sufficient on remand if that inquiry demonstrates that she was incorrect in initially alleging Cherokee ancestry. We agree with DCFS.

"In 1978, Congress passed the [ICWA], which is designed to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children 'in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family services programs.' [Citations.]" (*In re Marinna J.* (2001) 90 Cal.App.4th 731, 734.) "The ICWA presumes it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations, a most important resource." (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 469.)

"The ICWA confers on tribes the right to intervene at any point in state court dependency proceedings. [Citations.] 'Of course, the tribe's right to assert jurisdiction over the proceeding or to intervene in it is meaningless if the tribe has no notice that the action is pending.'" (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 253.) The ICWA thus sets forth specific notice requirements that

4

apply when DCFS and the court have reason to know the proceeding involves an Indian child, requiring that the tribe in which the child may have ancestry be notified of the pending proceedings, and of the tribe's right to intervene. (25 U.S.C. § 1912, subd. (a); *In re Marinna J., supra*, 90 Cal.App.4th at pp. 739-740, fn. 4.)

Circumstances that may provide reason to know the child is an Indian child include where "a member of the child's extended family provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (Welf. & Inst. Code, § 224.3, subd. (b)(1).) "'The determination of a child's Indian status is up to the tribe; therefore, the juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement.' [Citations.]" (*In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165 (*Gabriel G.*); see *In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1408 [father's suggestion that child "might" be an Indian child because paternal great-grandparents had unspecified Native American ancestry was sufficient to trigger ICWA notice requirements].) Both the court and DCFS have "an affirmative duty to inquire whether a dependent child is or may be an Indian child." (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 848; see Welf. & Inst. Code, § 224.3, subd. (a) [court and DCFS have "affirmative and continuing duty to inquire" whether minor may be an Indian child]; Cal. Rules of Court, rule 5.481(a).)

*Gabriel G.* is directly on point. In that case, the father argued that the ICWA was triggered when he filed an ICWA-020 form indicating that the paternal grandfather of the minor child "is or was a member" of a Cherokee tribe. (*Gabriel G., supra*, 206 Cal.App.4th at p. 1167.) Subsequently, however, the social worker reported that the father "stated that he did not have any Indian heritage." (*Ibid.; id.*

at p. 1164.)  Based on this statement by the father, DCFS recommended that the dependency court find that the ICWA did not apply.  The court terminated parental rights, without making specific ICWA findings as to the father.  (*Id.* at p. 1164.)

On appeal, our colleagues in Division Two rejected DCFS's argument that, based on the father's statement to the social worker that he did not have Indian heritage, the dependency court had no reason to know that the minor may be an Indian child.  The court found as follows:  "[T]he social worker's representation in the [DCFS] report did not provide any specifics regarding the inquiry he made of father as to his Indian heritage.  For example, the social worker did not state whether he limited his inquiry to father's registration in a federally recognized tribe or inquired about the registration status of father's relatives.  Nor did the social worker state whether he specifically asked father to elaborate on the information provided in the ICWA-020 form or to explain any discrepancy between its contents and father's statement to the social worker.  On the record before us, we cannot discern whether father meant to convey that while he was not a registered member of a Cherokee tribe, his own father was registered.  [¶]  At a minimum, a conflict in the evidence exists.  Under these circumstances, the social worker had a duty of further inquiry.  ([Welf. & Inst. Code,] § 224.3, subd. (c).)  But there is nothing in the record to indicate the social worker interviewed anyone besides father, such as the paternal grandmother . . . .  [¶]  Likewise, the court had the same 'affirmative and continuing duty' to inquire regarding the possible Indian status of the child. [Citations.]  Having received conflicting information, the juvenile court had a duty to further inquire of father, who was present at the 12-month hearing, about his Indian heritage, and certainly before terminating parental rights. [Citation.]  In the absence of further inquiry or information that reliably rebutted father's representation that Gabriel has specific Cherokee heritage through

6

the paternal grandfather, notice was required to be sent to the three federally-recognized Cherokee tribes prior to the court considering termination of parental rights, since father's claim gave the court 'reason to know that an Indian child is involved.' ([Welf. & Inst. Code,] § 224.3, subd. (d).)" (*Gabriel G., supra*, 206 Cal.App.4th at pp. 1167-1168, fn. omitted.) The court ordered a limited remand so that such notice to Cherokee tribes could be effectuated. (*Ibid.*)

In Jaida's case, Desiree completed an ICWA-020 form indicating that she had Cherokee heritage through her maternal grandfather, and at the detention hearing, her counsel repeated that she may have Cherokee heritage. As in *Gabriel G.*, DCFS's cursory report that Desiree subsequently denied Cherokee ancestry does not document the nature of the questions asked of her. Nor does it explain the discrepancy between her statement to a DCFS investigator and her statements on the ICWA-020 form and through her counsel that she may have Cherokee heritage through her maternal grandfather. Despite the dependency court's specific order that DCFS interview Desiree's maternal relatives and prepare a report that included details regarding their heritage and dates and places of birth, DCFS failed to conduct any interviews of her maternal relatives regarding their potential Cherokee ancestry, even though maternal relatives were interviewed on other subjects relating to the proceeding. Further, at subsequent hearings, the trial court failed to question Desiree regarding the discrepancies. Because Desiree's initial representations gave DCFS and the court reason to know that an Indian child may be involved, both were obligated under ICWA to make further inquiries. (Welf. & Inst. Code, § 224.3, subd. (a).)

As discussed above, Desiree and DCFS agree that further inquiry is required in the dependency court, but they appear to disagree about the procedure on remand. Desiree would have us follow *Gabriel G.*, in which the appellate court

7

ordered that notice be served to the Cherokee tribes, because no reliable information had rebutted the father's representation that he had Cherokee heritage. (*Gabriel G., supra*, 206 Cal.App.4th at p. 1168.) However, we agree with DCFS that if interviews of maternal relatives credibly rebut the initial allegation that Jaida may have Cherokee ancestry and support Jaida's subsequent statement to DCFS that she does not have such ancestry, serving such notices would be unnecessary.

Therefore, we remand the case so that DCFS may interview maternal relatives concerning Jaida H.'s potential Cherokee ancestry, as initially ordered by the dependency court. If this inquiry required under ICWA produces evidence rebutting Desiree's initial allegations of Cherokee ancestry, the court shall reinstate the order terminating parental rights. Should that inquiry fail to rebut her initial allegations that Jaida has Cherokee heritage, notice to the Cherokee tribes shall be given. Should a Cherokee tribe determine Jaida is an Indian child, the juvenile court shall proceed in conformity with the provisions of the ICWA. However, if no tribe indicates Jaida is an Indian child within the meaning of the ICWA, the court shall reinstate the order terminating parental rights.

**DISPOSITION**

The judgment is reversed and the case remanded to the dependency court with directions to conduct further inquiry into whether Jaida H. may have Cherokee ancestry, including by ordering DCFS to interview maternal relatives concerning her potential Cherokee ancestry. If this inquiry produces evidence rebutting Desiree's initial allegations of such Cherokee heritage, the court shall reinstate the order terminating parental rights. Should that inquiry fail to rebut her initial allegations that Jaida has Cherokee heritage, notice to the Cherokee tribes shall be given. If, after receiving proper notice, a tribe determines Jaida is an Indian child as defined by the ICWA, the juvenile court shall proceed in conformity with the provisions of the ICWA. If no tribe indicates Jaida is an Indian child within the meaning of the ICWA, the court shall reinstate the order terminating parental rights.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

EPSTEIN, P. J.          SUZUKAWA, J.

9