Filed 10/21/13  In re S.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.R., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E058241 |
| Plaintiff and Respondent, | (Super.Ct.No. J239144) |
| v. | OPINION |
| R.D., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall and Wilfred J. Schneider, Jr., Judges.[1]  Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[1] Judge Schneider presided over the detention hearing and Judge Marshall presided over the Welfare and Institutions Code section 366.26 hearing.

1

Jean-Rene Basle, County Counsel, and Dawn M. Messer, Deputy County Counsel, for Plaintiff and Respondent.

R.D. (Mother) appeals the order terminating her parental rights to S.R. pursuant to Welfare and Institutions Code section 366.26.[2]  She contends San Bernardino County Children and Family Services (CFS) failed to comply with the notice provision of the Indian Child Welfare Act (ICWA).[3]

## I.  PROCEDURAL BACKGROUND AND FACTS[4]

On May 27, 2011, CFS filed a petition pursuant to section 300, subdivisions (a) (serious physical harm) and (b) (failure to protect) based on a nonaccidental injury to the arm of S.R. (born April 2011) and the "extremely messy and cluttered" living conditions of the home.  The petition was amended on June 20, 2011, to add an allegation under subdivision (e) that S.R. also suffered a "fracture to the left posterior 7th rib."  An Indian Child Inquiry Attachment (ICWA-010(A) form) indicated S.R. may be eligible for membership in "Choctaw, Cherokee, Blackfoot, unknown other tribe."  The form also stated:  "Mother was asked if she had any Native American Indian Ancestry in her family and she stated [']my dad had Choctaw in his family and my mother had Blackfoot and Cherokee.[']"

_____

[2]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[3]  On April 9, 2013, this court incorporated the record in case No. E054596 with the record in this case, E058241.

[4]  Because Mother is the sole appealing parent, our discussion of the facts is limited to those facts pertaining to her and the issue she has raised.

2

At the May 31, 2011, detention hearing, the following discussion of Mother's American-Indian heritage took place:

"THE COURT: . . . [¶] Mother, do you have any American-Indian heritage in your bloodline?

"THE MOTHER: Yes, your Honor.

"THE COURT: What tribe is that?

"THE MOTHER: Blackfoot, Cherokee, and Kiowa, I believe.

"THE COURT: She has so indicated on the ICWA 020.

"[CFS COUNSEL]: I think—

"THE COURT: She redid that.

"[CFS COUNSEL]: There's a new one. Okay.

"THE COURT: Kiowa. It looks like it is spelled correctly too. Good job.

"Someone help you with that? Did someone look up and spell-check on that? I will assume this other one is incorrect.

"Cherokee, Blackfoot, and Kiowa. I'll put a line through this one.

"[CFS COUNSEL]: It was the spelling that was an issue."

At the further detention hearing held on June 1, 2011, the court found a prima facie case for detention out of the home. It ordered parents to complete "ICWA 020." Mother signed a Parental Notification of Indian Status (ICWA-020 form) [5] indicating she

_____

[5] Mother's signature on the undated Parental Notification of Indian Status (ICWA-020 form) matches her signature on the May 31, 2011, Notification of Mailing Address (JV-140 form).

may have Indian ancestry in Cherokee, Blackfoot, and Cahuilla; however, the form does not have a date or clerk's file stamp.

On June 15, 2011, CFS filed a Notice of Child Custody Proceeding for Indian Child (ICWA-030 form) indicating that notice for S.R. was mailed to various Cherokee, Cahuilla, and Blackfeet tribes, along with an ICWA Declaration of Due Diligence declaring that notice was sent to: Morongo Band of Cahuilla Mission Indians; Blackfeet Tribe of Montana; Torres-Martinez Desert Cahuilla Indians; Eastern Band of Cherokee Indians; Cahuilla Band of Mission Indians; Soboba Band of Luiseno Indians; Cherokee Nation of Oklahoma; Cabazon Band of Mission Indians; the Bureau of Indian Affairs; Los Coyotes Band of Cahuilla & Cupeno Indians; Agua Caliente Band of Cahuilla Indians; United Keetoowah Band of Cherokee Indians in Oklahoma; Ramona Band or Village of Cahuilla Mission Indians; Santa Rosa Band of Mission Indians; and Augustine Band of Cahuilla Indians. In the jurisdictional/dispositional report filed on June 16, 2011, CFS recommended that no reunification services be provided to Mother.

On August 9, 2011, CFS filed an ICWA Declaration of Due Diligence that included responses from various tribes, none of which indicated the child had Indian heritage and stating the tribe would not be intervening. On August 25, 2011, at the contested jurisdiction hearing, the court found true the allegations in the amended petition.

On September 23, 2011, at the contested dispositional hearing, the court declared S.R. to be a dependent of the court, removed him from parents' custody, maintained him in the home of the maternal great grandparents, and denied reunification services.

4

Regarding ICWA, the court found that "S.R. may come under the provisions of the Indian Child Welfare Act. I guess the packet will be forthcoming in that regard. Noticing requirements under ICWA have been initiated." Mother was present when the court informed her of her right to file a petition for writ of extraordinary review and set the 366.26 hearing.

On September 26, 2011, Mother filed a Notice of Intent to File Writ Petition; however, on October 21, she withdrew her notice for the reason there were no legal or factual issues upon which to file such petition. The petition was dismissed on October 28.

Following several continuances, the section 366.26 hearing was held on January 17, 2013. By that time, S.R. had been placed with a family in Missouri and had been with them since October 5, 2012. CFS offered its section 366.26 report into evidence, and the court received it, along with its addendum, into evidence with no objection from Mother. According to that report and subsequent addendum, "The Indian Child Welfare Act does not apply." Also, the Adoptability Assessment filed on May 11, 2012, notes the "Indian Child Welfare Act does not apply." Mother requested the court not to terminate parental rights but to choose a lesser plan of guardianship. The court terminated parental rights and ordered adoption as the permanent plan. According to the court's orders filed on January 17, 2013, the boxes finding that S.R. was an Indian child were not checked.

## II. ICWA NOTICE

Mother contends the notice requirements of ICWA were not met because CFS failed to provide notice to the Choctaw Tribes. She further claims the trial court had a duty to make further inquiry notice on this issue.

### A. *Applicable Law*

ICWA was enacted "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families . . . ." (25 U.S.C. § 1902.) In general, ICWA applies to any state court proceeding involving the foster care or adoptive placement of, or the termination of parental rights to, a Native American child. (25 U.S.C. §§ 1903(1), 1911(a)-(c), 1912-1918, 1920-1921.) Under the notice provision of ICWA, if the court "knows or has reason to know that an Indian child is involved," the social services agency must "notify . . . the Indian child's tribe . . . of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).)

California Rules of Court, rule 5.481(a), provides that the court and the county welfare department have "an affirmative and continuing duty to inquire whether a child is or may be an Indian child in all proceedings identified in rule 5.480 [(i.e., a petition under Welfare and Institutions Code section 300)]." (Cal. Rules of Court, rule 5.481(a).) California Rules of Court, rule 5.481(a)(1) provides that CFS "must ask . . . the parents . . . whether the child is or may be an Indian child and must complete the *Indian Child Inquiry Attachment* (form ICWA-010(A)) and attach it to the petition . . . ." California Rules of Court, rule 5.481(a)(2) provides that "At the first appearance by a parent . . . in

6

any dependency case . . . the court must order the parent . . . to complete *Parental Notification of Indian Status* (form ICWA-020)."

   *B. Analysis*

   According to the record before us, both CFS and the trial court fulfilled their duties of inquiry as to the Mother. Initially, upon inquiry of Mother's Indian heritage, the Choctaw Tribe was mentioned; however, at the time of Mother's first appearance on May 31, 2011, the court not only ordered her to complete the Parental Notification of Indian Status (form ICWA-020), but it also inquired as to her Indian heritage. Mother responded, "Blackfoot, Cherokee, and Kiowa." The court stated: "I will assume this other one is incorrect. [¶] Cherokee, Blackfoot, and Kiowa. I'll put a line through this one." Mother did not object, nor did she reaffirm the Choctaw Tribe. In June 2011, CFS filed documentation with the trial court, identifying the various tribes that had been noticed. Later, on September 23, 2011, the court found that "[S.R.] may come under the provisions of the Indian Child Welfare Act. I guess the packet will be forthcoming in that regard. Noticing requirements under ICWA have been initiated." While Mother was present and represented by counsel at each appearance, she never informed anyone—her counsel, CFS, or the court—that they had failed to notify the Choctaw Tribe. In subsequent reports filed with the court, CFS noted that ICWA did not apply. By the time of the section 366.26 hearing, the trial court acted as if ICWA did not apply. While there is nothing in the record before this court showing the date upon which the trial court stated on the record that ICWA did not apply, at the section 366.26 hearing in January 2013, the trial court accepted the section 366.26 report and its addendum into evidence

7

without any objection by Mother. That report, and its addendum, noted that ICWA did not apply. Further, the section 366.26 orders failed to check the box noting that S.R. was an Indian child.

Mother argues that the rule announced in *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, pages 1167 through 1168 (*Gabriel G.*), applies here. In *Gabriel G.*, the father's attorney filed an ICWA-020 form stating that the "paternal grandfather, Gasper G., 'is or was a member' of a 'Cherokee' tribe." (*Id.* at p. 1163.) However, the form was unsigned. (*Ibid.*) Later, the social worker reported that in an interview, the father had stated he had no Indian heritage. (*Id.* at p. 1164.) Despite father's presence in the trial court, the court failed to question him regarding his Indian heritage or make any ICWA finding. (*Gabriel G.*, *supra*, at p. 1164.) The appellate court stated: "[T]he social worker[] . . . did not provide any specifics regarding the inquiry he made of father as to his Indian heritage. For example, the social worker did not state whether he limited his inquiry to father's registration in a federally recognized tribe or inquired about the registration status of father's relatives. Nor did the social worker state whether he specifically asked father to elaborate on the information provided in the ICWA-020 form or to explain any discrepancy between its contents and father's statement to the social worker. On the record before us, we cannot discern whether father meant to convey that while he was not a registered member of a Cherokee tribe, his own father was registered." (*Id.* at p. 1167.)

Here, in contrast to the facts in *Gabriel G.*, while the initial ICWA-010(A) form indicated Mother may have potential Choctaw heritage, the juvenile court specifically

8

questioned her regarding her Indian heritage. Mother omitted a potential Choctaw heritage, identifying only Cherokee, Blackfoot and Kiowa. Further, she did not correct the trial court when it indicated that it was assuming the Choctaw heritage was incorrect. Thus, Mother's recantation of possible Indian heritage with the Choctaw Tribe allowed CFS and the trial court to proceed without providing notice to that tribe. (*In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1516, 1518-1519 [recantation of claim of Indian ancestry allows a dependency case to proceed without ICWA notice].)

## III. DISPOSITION

The juvenile court's order terminating Mother's parental rights is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

            HOLLENHORST

                              Acting P. J.

We concur:

    KING

                  J.

    CODRINGTON

                  J.