Filed 5/23/22  In re Z.W. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Z.W. et al., Persons Coming Under the Juvenile Court Law. | B314296 (Los Angeles County Super. Ct. No. 19CCJP02788) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. S.R., Defendant and Appellant. | |

APPEAL from an order establishing a legal guardianship of the Superior Court of Los Angeles County, Stephen C. Marpet, Judge Pro Tempore.  Reversed with instructions.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

————————————

Mother and father have three children. The eldest was born in 2012, the middle in 2013, and the youngest in 2015. Since the beginning of the dependency proceedings, the children lived with their paternal grandparents. During the course of the dependency proceedings, the juvenile court concluded that it had no reason to know the children were Indian children. Mother appeals from the order granting paternal grandparents' legal guardianship over the children.

Mother argues that the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with state law (Welf. & Inst. Code,[1] § 224.2) implementing the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA). Specifically, mother argues that the child welfare agency should have interviewed her extended family members about Indian ancestry. Respondent counters that the error was not prejudicial because interviewing mother's extended family members would not have produced meaningful information about the children's Indian ancestry.

Although she later denied it, mother initially indicated that her family may have Indian ancestry. DCFS did not ask

_____

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

2

maternal grandmother about this apparent conflict when DCFS interviewed her nor did DCFS ask maternal aunt about Indian ancestry, even though maternal aunt monitored mother's visits with the children. Based on this record, we conclude DCFS's failure to ask extended family members about Indian ancestry was prejudicial. We thus reverse the order terminating juvenile court jurisdiction, conditionally affirm the order granting legal guardianship, and remand to the juvenile court with instructions.

## BACKGROUND

On May 2, 2019, DCFS filed a section 300 petition. As later sustained, the petition alleged that mother abused amphetamine, methamphetamine, ecstasy, and marijuana and was thus unable to care for her children. On appeal, mother does not challenge these jurisdictional findings. Her sole claim of error on appeal is that DCFS did not interview extended family members about the children's Indian ancestry and that this failure was prejudicial. We thus limit our background discussion to the ICWA proceedings below and the court's orders.

On May 3, 2019, at the detention hearing, the juvenile court asked paternal grandmother if her family had any Indian heritage. Paternal grandmother denied any such ancestry, and the juvenile court found as to father, it had no reason to know the children were Indian children. The juvenile court deferred any ICWA determination as to mother because mother did not appear at the detention hearing.

On May 30, 2019, mother told a social worker that the children may have Indian ancestry. Mother did not provide the name of any specific tribe. Mother refused to provide maternal grandmother's contact information. Mother reported she would check with maternal grandmother about Indian ancestry and

3

provide additional information to the social worker. Mother never provided any additional information about Indian ancestry, and the record does not reveal whether she ever spoke with her grandmother about Indian ancestry.

A social worker asked paternal grandmother if mother's family had Indian ancestry. Paternal grandmother reported that she was not aware of any. Paternal grandmother reiterated that father's side had no Indian ancestry.

On June 10, 2019, mother filed a Judicial Council ICWA-020 Form (as updated January 1, 2008) indicating that she had no Indian ancestry as far as she knew. At a hearing on June 10, 2019, the juvenile court asked mother if she had any Indian ancestry, and she indicated she did not. That same day, the court found no reason to know that the children were Indian children as to mother's side.

On June 12, 2019, the social worker contacted maternal grandmother. The record does not indicate whether the social worker asked maternal grandmother about Indian ancestry. Maternal aunt A.P. monitored mother's visits with the children. There is no indication that social workers asked A.P. about Indian ancestry. The record also indicates that the children had contact with another maternal aunt, but does not disclose whether DCFS asked her about Indian ancestry.

Mother did not reunify with the children. Mother lived with maternal grandmother during portions of the dependency period and at other times, enrolled in multiple drug treatment programs. Father did not participate in the dependency proceedings, during which he was incarcerated. Father had not seen paternal grandparents in over four years.

4

The children remained placed with paternal grandparents throughout the dependency proceedings. Paternal grandmother wanted to become the children's legal guardian. Paternal grandmother did not want to adopt the children because she did not want to prevent the parents from reunifying with them in the future.

At the section 366.26 hearing, the juvenile court found that the children were living with a relative who is unable or unwilling to adopt but who is willing and capable of providing the children with permanency through legal guardianship. The court ordered long-term guardianship with paternal grandparents as the children's permanent plan. The court then terminated jurisdiction over the children. Mother appealed from the order setting long-term guardianship as the permanent plan.[2]

## DISCUSSION

"At the outset of a dependency case, the child welfare agency and the juvenile court have a statutory initial duty to inquire into whether a child is, or may be, an Indian child. 'The child welfare department's initial duty of inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." [Citation.]' [Citation.]" (*In re Darian R.* (2022) 75 Cal.App.5th 502, 507 (*Darian R.*), fn. & italics omitted.) Under ICWA, the term "extended family

___

[2] Mother also appealed from the denial of a section 388 motion. In her appellate briefing, however, she does not address this section 388 motion. We thus do not discuss it.

member" is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."  (25 U.S.C. § 1903(2).)

The parties do not dispute that social workers should have interviewed maternal grandmother and maternal aunts, who were readily available.  They only dispute whether this error was prejudicial.

Respondent argues the error was not prejudicial under the test in *In re Benjamin M.* (2021) 70 Cal.App.5th 735, (*Benjamin M.*).  *Benjamin M.* held that the failure to interview an extended family member about Indian ancestry is prejudicial "where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child."  (*Id.* at p. 744.)  The *Benjamin M.* court concluded the failure to inquire of extended family members was prejudicial there because the father of one of the children never appeared in the proceeding and father's brother was available to ask about father's Indian ancestry.  *Benjamin M.* reasoned, "Father's brother's knowledge of his own Indian status would be suggestive of Father's status.  While we cannot know how Father's brother would answer the inquiry, his answer is likely to bear meaningfully on the determination at issue about his brother."  (*Id.* at p. 745.)

In *In re A.C.* (2022) 75 Cal.App.5th 1009, a majority of this court held the failure to ask extended family members about Indian ancestry was prejudicial under the circumstances of that case.  There, on their Judicial Council ICWA forms, the parents

6

declined Indian ancestry, but a detention report referenced that the child may be an Indian child. Yet DCFS failed to interview readily extended family members about Indian ancestry, and particularly the conflicting evidence of such ancestry. The need to interview extended family members was all the more apparent because mother herself had been in foster care and arguably may not have been familiar with her own heritage. The majority thus concluded that we could not "assume that the parents' mere denial of Indian ancestry on a form was sufficient to dispel prejudice from DCFS's failure to ask A.C.'s extended family members about potential Indian ancestry." (*Id.* at p. 1017.)

In contrast, in *Darian R.*, we rejected the mother's claim that failure to interview her aunt and father, with whom she had lived during part of the dependency proceedings, was prejudicial where both parents denied Indian ancestry, mother was under a court order to provide information relevant to ICWA, there was no evidence mother was estranged from her family, and a prior court order in an earlier dependency case involving the same biologic parents found ICWA inapplicable. Under these circumstances, we concluded, "The record simply does not support mother's unvarnished contention that additional interviews of mother's father and sister would have meaningfully elucidated the children's Indian ancestry." (*Darian R.*, *supra*, 75 Cal.App.5th at p. 510; but see *In re Antonio R.* (2022) 76 Cal.App.5th 421, 435 [disagreeing with *Darian R.*].) Similarly, DCFS's failure to interview a maternal grandmother was not prejudicial when the maternal grandmother was incentivized earlier in the proceedings to reveal Indian ancestry when she, with the support of mother's counsel, sought placement of the child in her care, yet revealed no such Indian ancestry. (*In re*

7

*S.S.* (2022) 75 Cal.App.5th 575, 581–582 but see *In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 435 [disagreeing with *In re S.S.*].)

As mother argues, and we agree, this case resembles *In re A.C.* more than *Darian R.* and *In re S.S.* As in *A.C.*, mother gave conflicting information about her Indian ancestry on her ICWA Judicial Council form and to the social worker, yet when the juvenile court asked mother if she had Indian ancestry, the court did not inquire as to mother's conflicting descriptions of her ancestry. Despite this conflicting evidence, DCFS did not ask any of mother's relatives about Indian ancestry even though relatives were readily available to DCFS. As in *Benjamin M.* and *In re A.C.*, asking maternal relatives about Indian ancestry may have yielded meaningful information about the children's Indian ancestry and the failure to do so was prejudicial.

Where there is conflicting evidence about Indian ancestry, DCFS has a duty to obtain additional information if relatives are available to address a parent's conflicting statements about Indian ancestry. Thus, in *In re Gabriel G.* (2012) 206 Cal.App.4th 1160 the father indicated on his ICWA-020 form that paternal grandfather may have Cherokee ancestry. (*Id.* at p. 1167.) Later, when a social worker interviewed him, father denied any Indian ancestry. (*Ibid.*) The social worker did not ask father about this apparent discrepancy regarding Indian ancestry and did not interview paternal grandfather. (*Ibid.*) Division Two of this court held: "At a minimum, a conflict in the evidence exists. Under these circumstances, the social worker had a duty of further inquiry. [Citation.] But there is nothing in the record to indicate the social worker interviewed anyone besides father . . . ." (*Id.* at pp. 1167–1168.) The court then

remanded the case to the juvenile court to ensure compliance with ICWA. (*Id*. at p. 1168.)

Following *In re Gabriel G.*, Division Eight of this court held in *In re Josiah T.* (2021) 71 Cal.App.5th 388 that where seven months after paternal grandfather told social workers about Cherokee ancestry, paternal grandmother denied Indian ancestry, "a mere change in reporting, without more, is not an automatic ICWA free pass; when there is a conflict in the evidence and no supporting information, DCFS may not rely on the denial alone without making some effort to clarify the relative's claim." (*Josiah T.*, at p. 405.) The same holds true here regarding mother's conflicting statements about Indian ancestry.[3]

---

[3] Other appellate courts have applied a more stringent test of prejudice for failure to ask extended family members about Indian ancestry, generally finding that failure always prejudicial. See, e.g., *In re A.R.* (2022) 77 Cal.App.5th 197, 207 ["Any other rule would potentially make enforcement of the tribes' rights dependent on the quality of the parents' effort on appeal. . . . Stated plainly, it is the obligation of the government, not the parents in individual cases, to ensure the tribes' interests are considered and protected." ]; *In re Antonio R., supra,* 76 Cal.App.5th at pp. 433–435; see also *In re J.C.* (2022) 77 Cal.App.5th 70, 81–84. Under more stringent tests, the failure to ask extended family members about Indian ancestry here also would be prejudicial.

## DISPOSITION

The juvenile court's order terminating jurisdiction is reversed. The order setting a permanent plan for the children is conditionally affirmed. The case is remanded to the juvenile court to direct DCFS to comply with Welfare and Institutions Code section 224.2 and, if applicable, section 224.3. If after completing the inquiry, the juvenile court finds it has no reason to believe or know that the children are Indian children, the section 366.26 guardianship order shall remain in effect and the juvenile court shall issue a new order terminating its jurisdiction. If the court finds ICWA applies, the court shall vacate its existing section 366.26 order and proceed in compliance with ICWA and related California law.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, Acting P. J.

We concur:

CHANEY, J.

MORI, J.*

_____

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10