Filed 8/14/23  In re J.M. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.M. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E080701 |
| Plaintiff and Respondent, | (Super.Ct.No. J288335, J288336) |
| v. | OPINION |
| A.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Conditionally affirmed with directions.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, Joseph R. Barrell, Deputy County Counsel, for Plaintiff and Respondent.

1

In this appeal following the termination of parental rights, the mother contends that the social services agency failed to comply with its duty of further inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA). We agree, conditionally affirm, and remand with directions.[1]

## I. BACKGROUND

In March 2021, plaintiff and respondent San Bernardino County Children and Family Services (CFS) filed a section 300 petition for J.G. (born 2017) and J.M. (born 2019), whose mother is A.M. (Mother). Because this appeal raises only ICWA compliance, we need not discuss in detail the circumstances leading to the children's removal or Mother's reunification efforts; the juvenile court terminated Mother's parental rights to the children in February 2023.[2]

At an April 2022 hearing, the juvenile court asked Mother's grandfather whether he was aware of any Indian ancestry in his family. He answered no. Mother's grandfather reiterated the denial at a May 2022 hearing. At a July 2022 hearing, however, Mother's grandfather gave a different answer. He stated that he "was told that [his] mother's mother had a little Indian in her," adding that the tribe was "Cherokee" but

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code. In addition, because ICWA uses the term "Indian," we do the same for consistency, even though we recognize that other terms, such as "Native American" or "indigenous," are preferred by many.

[2] We note that few days after the petition was filed, Mother gave birth to a third child, who was also detained. That petition was dismissed a year later, after the child died. Mother has been charged with the child's murder.

that he did not know where the tribe was located. Although he also did not know his grandmother's name, Mother's grandfather provided the court with his mother's name, place of birth, and date of death, and he stated that he would provide the court with his mother's obituary. CFS does not appear to have obtained a copy of the obituary. Mother's grandfather later informed a social worker that there were no other living relatives that could be contacted to inquire about Indian ancestry. At two subsequent hearings, when the juvenile court asked Mother's grandfather whether it was correct that he previously stated there's no Indian ancestry, he answered affirmatively. Several of Mother's other relatives, including five siblings who share Mother's last name, also denied having Indian ancestry when asked by social workers.

In September 2022, CFS sent an email to the Cherokee Nation and the Bureau of Indian Affairs asking for assistance in determining whether the children or their family may have Indian ancestry. It included the names and birthdates for the children and several of their relatives, but it did not include any information about Mother's great-great-grandmother (the relative that may have had Cherokee ancestry), Mother's great-grandmother (the closest relative to the great-great grandmother that CFS had information for), or Mother's siblings. CFS did not contact the other two federally recognized Cherokee tribes: the Eastern Band of Cherokee Indians and the United Keetoowah Band of Cherokee Indians in Oklahoma. (See 88 Fed. Reg. 2112 (Jan. 12, 2023).) At the permanency planning hearing in February 2023, the juvenile court found that ICWA did not apply.

3

## II. DISCUSSION

"Congress enacted ICWA over 40 years ago to address '"abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes."' [Citation.] . . . As a result, ICWA's express purpose is 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.'" (*In re K.T.* (2022) 76 Cal.App.5th 732, 740.)

"When ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding. [Citation.] If the tribe does not assume jurisdiction, the state court must nevertheless follow various heightened procedural and substantive requirements, such as stricter removal standards and mandatory placement preferences that promote keeping Indian children with family members or members of their tribe." (*In re K.T.*, *supra*, 76 Cal.App.5th at p. 741.) "Violations of ICWA '"render[] the dependency proceedings, including an adoption following termination of parental rights, vulnerable to collateral attack if the dependent child is, in fact, an Indian child."'" (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741.)

"Section 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, . . . the duty to inquire 'includes, but

4

is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048-1049.) This duty, sometimes referred to as the duty of initial inquiry, is not at issue in this case.

However, when an agency "has 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required. (§ 224.2, subd. (e).) The required further inquiry includes (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe. At this stage, contact with a tribe 'shall, at a minimum,' include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of ICWA notice, and 'sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case.'" (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1049, fns. omitted.) "The sharing of information with tribes at this inquiry stage is distinct from formal ICWA notice, which requires a 'reason to know'—rather than a 'reason to believe'—that the child is an Indian child." (*Ibid.*, fn. omitted; see also *In re K.T.*, *supra*, 76 Cal.App.5th at p. 743 [duty of further inquiry "applies even if the information

5

suggesting a child may have an affiliation with a tribe 'isn't strong enough to trigger the notice requirement'"].)

Mother contends that CFS did not adequately discharge its duty of further inquiry because it neither contacted the other Cherokee tribes nor provided the Cherokee tribe it did contact with adequate information. We agree. Given that Mother's grandfather stated that his grandmother might have some Cherokee ancestry and did not know where that tribe might have been located, there was no reason for CFS to have contacted only one of the Cherokee tribes. Moreover, the omission of several of Mother's relatives in CFS's emails to the Cherokee Nation and the Bureau of Indian Affairs[3] made those e-mails deficient. First, although CFS does not appear to have obtained information about Mother's great-great-grandmother (the relative who may have been in a Cherokee tribe), it also did not document any efforts to obtain the obituary that Mother's grandfather stated he would provide the court, which the court noted "may have some information and names of other relatives." Second, CFS had a name and other information for Mother's great-grandmother, as Mother's grandfather provided them in court, but her information was not included in CFS's emails. And third, CFS similarly omitted names and birthdates for Mother's aunts and uncles Mother and her grandfather share a last name with, family members who arguably could have contacts with a Cherokee tribe that her grandfather lacked. As this court stated in *In re K.T.*, Mother's grandfather's "claims

---

[3] It does not appear that CFS contacted the California Department of Social Services. (See § 224.2, subd. (e)(2)(B) [further inquiry includes "[c]ontacting the Bureau of Indian Affairs and the State Department of Social Services for assistance"].)

of Indian heritage may lead to a dead end, but that determination should be the result of investigation not assumption." (*In re K.T.*, *supra*, 76 Cal.App.5th at p. 744.)

CFS contends that the duty of further inquiry was never triggered, relying on *In re Q.M.* (2022) 79 Cal.App.5th 1068. The reliance is misplaced. There, the father informed the juvenile court that he may have Cherokee ancestry but later repeatedly disavowed that statement. (*Id.* at pp. 1082-1083.) Citing no precedent, the court concluded that "[u]nder these unique facts, we are not persuaded that father's [initial] statement . . . gave rise to 'reason to believe' the children were Indian children." (*Id.* at p. 1083.) However, because "reason to believe" is broadly defined as "information *suggesting* that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe" (§ 224.2, subd. (e)(1), italics added), we agree with those cases that have held that an unexplained conflict in the evidence triggers the duty of further inquiry. (See, e.g., *In re Josiah T.* (2021) 71 Cal.App.5th 388, 405 ["a mere change in reporting, without more, is not an automatic ICWA free pass; when there is a conflict in the evidence and no supporting information, [an agency] may not rely on the denial alone without making some effort to clarify the relative's claim"]; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1167 ["At a minimum, a conflict in the evidence exists. Under these circumstances, the social worker had a duty of further inquiry"].)

We suggest that CFS continue its inquiry by returning to Mother's grandfather to determine whether he can provide the obituary he stated that he would provide; whether he persists in (or instead disavows) his statement about information that he had some

level of Indian ancestry; and, if he persists, whether he can provide any more information about that ancestry and persons who may know about it. Depending on the answers to these questions, CFS should decide whether further steps are needed to properly comply with its inquiry duties.

### III.  DISPOSITION

The orders terminating parental rights to J.G. and J.M. are conditionally affirmed. The matter is remanded to the juvenile court with direction to comply with the inquiry provisions of ICWA and of Welfare and Institutions Code section 224.2 (and, if applicable, the notice provisions as well), consistent with this opinion.  If, after completing the inquiries, neither CFS nor the court has reason to know that J.G. or J.M. are Indian children, the orders terminating parental rights will remain in effect.  If CFS or the court has reason to know that J.G. or J.M. is an Indian child, the court shall proceed accordingly.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____
J.

We concur:

CODRINGTON_____
Acting P. J.

MENETREZ_____
J.