Filed 8/28/23  In re D.P. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re D.P., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.P.,<br><br>Defendant and Appellant. | F086027<br><br>(Super. Ct. No. JD143039-00)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Beth A. Sears, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Jennifer E. Feige, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Detjen, Acting P. J., Franson, J. and Smith, J.

Appellant Jason P. (father) is the father of the three-year-old child, D.P. (the child), who is the subject of this dependency case. Father challenges the juvenile court's orders issued at a contested Welfare and Institutions Code section 366.26[1] hearing that resulted in his parental rights being terminated. Father contends the juvenile court failed to comply with the duty to further inquire under the Indian Child Welfare Act (ICWA). Respondent, Kern County Department of Human Services (department) concedes that it conducted an inadequate inquiry under ICWA. We conditionally reverse the juvenile court's orders terminating parental rights and remand for proceedings to ensure ICWA compliance and otherwise affirm the juvenile court's orders.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### *Initial Removal*

On March 9, 2022, the child was taken into protective custody at one year of age as a result of the death of her sibling, hazardous conditions in the home, and K.B.'s (mother) mental illness and substance abuse. The department filed a petition alleging the child was described by section 300, subdivision (b)(1). The petition alleged the child was at substantial risk of suffering serious physical harm as a result of the unsanitary conditions in the home and mother's substance abuse and mental illness.

The Indian Child Inquiry Attachment (ICWA-010 form) to the petition stated an inquiry was made of mother by the social worker, and the inquiry provided reason to believe the child was or may be an Indian child. Specifically, the inquiry indicated that the parents, grandparents, or great-grandparents of the child are or were members of the Apache, Blackfeet, and Cherokee tribes. The social worker was unable to speak with father about possible Indian ancestry at the time the petition was filed.

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] We primarily focus our facts on those bearing on the issue of inquiry under ICWA because that is the only issue raised on appeal.

2.

The report prepared for the detention hearing set forth the reasons for the child's removal from the parents' custody. The investigating social worker contacted the maternal grandmother at her home on March 8, 2022, and the maternal grandmother denied having any Indian ancestry. The social worker spoke to mother over the phone while at the maternal grandmother's home, and mother denied having any Indian ancestry.

Later that same day, the social worker visited the home of the maternal aunt, J.K., who was taking care of the child. J.K. indicated she may have Indian ancestry through the child's maternal grandfather. The Cherokee and Blackfeet tribes were mentioned as potential tribes by J.K. On March 11, 2022, the social worker spoke to the maternal uncle, R.B., who was the owner of the apartment that mother and the child lived in. Father did not live in the home, but he was present in the home every night.

At the detention hearing held on March 15, 2022, mother was present and father was not. The juvenile court directly inquired of mother regarding possible Indian ancestry in her family, and she denied having knowledge of Indian ancestry in her family. Mother's request for a one-day continuance of the detention hearing was granted. A Parental Notification of Indian Status form (ICWA-020 form) completed by mother's counsel on March 15, 2022, indicated no circumstances were applicable to suggest the child may be an Indian child based upon mother's knowledge.

Mother and father were both present for the continued hearing on the following date. The juvenile court acknowledged receipt of father's ICWA-020 form, which indicated that he was or may be a member or eligible for membership in an Indian tribe. During the juvenile court's inquiry, father identified his maternal great-grandparents as possibly having Indian ancestry through the Cherokee tribe. He also identified his maternal aunt as an individual with more information on the family's ancestry. Both parents submitted the matter, and the juvenile court ordered the child detained from the custody of her parents. A jurisdiction hearing was scheduled for May 4, 2022.

3.

*Jurisdiction and Disposition*

The department's jurisdiction report, dated April 29, 2022, recommended that the allegations in the petition be found true. The ICWA status section of the report indicated that no further inquiries had been made, but a paralegal would be initiating a further inquiry on behalf of father's claim of ancestry. The report also detailed the investigating social worker's interview of mother prior to the detention hearing. On March 11, 2022, mother informed the social worker that she might have Indian ancestry through her grandmother through the Cherokee, Apache, and Blackfeet tribes. Mother also claimed father had Cherokee ancestry.

A declaration executed by a department paralegal on May 3, 2022, detailed the department's efforts of further inquiry into father's claim of Indian ancestry. Paternal relatives confirmed the family's Cherokee ancestry and further inquiry was conducted with the three Cherokee tribes. Responses from the tribes had not been received by the filing of the declaration. Both parents were present for the jurisdiction hearing, and the juvenile court sustained the allegations in the petition and set a disposition hearing for May 18, 2022.

The department's report for the disposition hearing, dated May 13, 2022, recommended family reunification services be provided to mother and denied to father. A family finding social worker found information on four of the child's maternal siblings, maternal grandparents, three maternal aunts, and a maternal uncle, and mother provided the social worker with the names of 15 relatives. Letters were sent to maternal and paternal family members found by the social worker. The ICWA section of the report detailed the paralegal's further inquiry of father's paternal family members, and it was consistent with the declaration.

At the disposition hearing held on May 18, 2022, mother and father were present and father objected to the recommendation to deny him family reunification services. The juvenile court ordered reunification services for mother, denied reunification services

4.

for father, found ICWA was not applicable, and set a six-month review hearing for November 17, 2022. Father appealed the disposition order, and we affirmed the order on March 17, 2023, in case No. F084392.

***Family Reunification Period***

The department's report for the six-month review hearing, dated November 8, 2022, recommended termination of mother's family reunification services and the setting of a section 366.26 hearing. Mother had failed to make adequate progress in her case plan. She failed to participate in substance abuse counseling, a mental health assessment, or a 26-week parenting program. The ICWA section of the report stated that an inquiry was completed of mother and father and the juvenile court previously found ICWA was not applicable without additional information on the claim of Indian ancestry by the maternal family. At a contested six-month review hearing, mother and father were both present and provided testimony about her efforts to participate in the case plan. After hearing argument from counsel, the juvenile court terminated mother's family reunification services and set a section 366.26 hearing for March 29, 2023.

***Section 366.26 Hearing***

The department's section 366.26 report, filed on March 29, 2023, recommended that the juvenile court terminate the parental rights of mother and father and order a permanent plan of adoption for the child. The child had been placed in the home of her prospective adoptive parents for the last year, and the family was committed to providing her an adoptive home.

The ICWA section of the report included documentation of efforts by a family finding social worker to complete an ICWA inquiry for the maternal side of the family in November 2022. Attempts to contact the child's maternal grandfather, J.K., R.B., and a maternal aunt by phone were unsuccessful. The maternal grandmother, maternal uncle, and two maternal aunts each denied having any knowledge of Indian ancestry in the family. No further information regarding ICWA was provided in the report.

5.

On March 29, 2023, father was present for the section 366.26 hearing and mother was not present. Father's counsel entered an objection to the department's recommendation without presenting additional evidence. The juvenile court proceeded to terminate the parental rights of mother and father and select a plan of adoption for the child. Father filed a timely notice of appeal on April 5, 2023.

## DISCUSSION

Father contends the juvenile court's finding that ICWA did not apply was not supported by sufficient evidence because the department failed in its further inquiry of a claim of Indian ancestry by the child's maternal family.

### A. Applicable Law

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe … have a right to intervene" (25 U.S.C. § 1911(c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224, subd. (e)). An " 'Indian child' " is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

In every dependency proceeding, the department and the juvenile court have an "affirmative and continuing duty to inquire whether a child is or may be an Indian child .…" (Cal. Rules of Court, rule 5.481(a); see § 224.2, subd. (a); *In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.) The continuing

6.

duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child." (§ 224.2, subd. (a).) Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (§§ 224.2, subd. (b), 306, subd. (b).) The juvenile court has a duty at the first appearance of each parent to ask whether he or she "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) The court must also require each parent to complete form ICWA-020. (Cal. Rules of Court, rule 5.481(a)(2)(C).)

Next, a duty of further inquiry arises when the department or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient information to determine that there is reason to know that the child is an Indian child." (§ 224.2, subd. (e).) As recently clarified by the Legislature, a "reason to believe" exists when the juvenile court or department "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (*Id.*, subd. (e)(1).)

If there is a reason to believe an Indian child is involved, the juvenile court or the department "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) Further inquiry includes, but is not limited to, "[i]nterviewing the parents, Indian custodian, and extended family members," and contacting the Bureau of Indian Affairs, the State Department of Social Services, and the tribes and any other person who may have information. (§ 224.2, subd. (e)(2)(A)–(C).)

7.

The final duty component arises when the court or department has " 'reason to know' " the child is an Indian child.  (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 567.) A "reason to know" exists if one of the following circumstances is present:  "(1) A person having an interest in the child … informs the court that the child is an Indian child[;] [¶] (2) The residence … of the child [or] the child's parents … is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding … informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child … gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[; or] [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe."  (§ 224.2, subd. (d)(1)–(6).)

If the juvenile court makes a finding that proper and adequate further inquiry and due diligence have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that the ICWA does not apply, subject to reversal if the court subsequently receives information providing reason to believe the child is an Indian child.  If the court receives such information, it must direct the social worker or probation officer to conduct further inquiry.  (§ 224.2, subd. (i)(2).)

### B.  Standard of Review

Where the juvenile court finds ICWA does not apply to a child after completion of an initial inquiry, "[t]he finding implies that … social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry."  (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.)  We review the juvenile court's ICWA findings for substantial evidence. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.)  We must uphold the juvenile court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.  (*In re Alexzander C.* (2017) 18

8.

Cal.App.5th 438, 446.)  The appellant "has the burden to show that the evidence was not sufficient to support the findings and orders."  (*Ibid*.)

### C. Analysis

Pursuant to its duty under section 224.2, the juvenile court asked each parent whether they had any Indian heritage.  Father claimed possible Indian ancestry while mother informed the juvenile court that she had no Indian ancestry.  However, mother informed a department social worker that she had Indian ancestry in her family prior to the detention hearing, and the ICWA-010 form attached to the petition reflected this reporting.  There is no evidence in the record to suggest that the juvenile court and department conducted an adequate further inquiry into mother's claim of Indian ancestry.  In fact, mother's sister, J.K., supplied the same information about potential ancestry through the child's maternal grandfather.

The department was required to ask extended family members about the child's possible Indian ancestry pursuant to its duty of further inquiry.  (§ 224.2, subd. (e).)  Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins.  (25 U.S.C. § 1903(2); § 224.1, subd. (c).)  There were at least two extended family members, the maternal grandfather and maternal uncle, R.B., who were identified by mother and J.K. prior to the detention hearing.

The investigating social worker interviewed R.B., but the department either failed to ask this extended family member about Indian ancestry or did not document it.  Furthermore, the maternal grandfather, who was identified as the potential source of Indian ancestry from the beginning of the case, was never interviewed by the department.  The only attempt to contact the maternal grandfather was more than eight months after the child's removal, and the social worker made no further efforts to contact him for information on the maternal family's ancestry.

Under the circumstances, we accept the department's concession and conclude the department did not fulfill its statutory duty of further inquiry. As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence that the department conducted an adequate, proper, and duly diligent inquiry, and its contrary conclusion was an abuse of discretion.

Because the failure in this case concerned the department's duty of further inquiry, only state law is involved. "Where a violation is of only state law, we may not reverse unless we find that the error was prejudicial. (Cal. Const., art. VI, § 13 ['No judgment shall be set aside … unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice'].)" (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742.)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*In re K.H.* (2022) 84 Cal.App.5th 566, 606–607 (*K.H.*).)

However, in *In re A.R.* (2021) 11 Cal.5th 234, the Supreme Court "recognized that while we generally apply a *Watson*[3] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

---

**3**      *People v. Watson* (1956) 46 Cal. 2d 818, 820.

As we explained in *K.H.*, "where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, *supra*, 84 Cal.App.5th at p. 610.) Here, the department's inquiry, "fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law." (*Id*. at p. 620.) Therefore, the error is prejudicial.

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the department to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and California Rules of Court, rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, the court shall reinstate its ICWA finding. In all other respects, the court's order terminating parental rights is affirmed.