Filed 12/29/23  In re Andrea A. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ANDREA A., a Person Coming Under the Juvenile Court Law. | |
| MERCED COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. MICHAEL M., Defendant and Appellant. | F086567 (Super. Ct. No. 21JP-00135D) **OPINION** |

### THE COURT\*

APPEAL from an order of the Superior Court of Merced County.  Donald J. Proietti, Judge.

Gregory M. Chappel, under appointment by the Court of Appeal, for Defendant and Appellant.

Forrest W. Hansen, County Counsel, and Ann Hanson, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Hill, P. J., Detjen, J. and DeSantos, J.

Appellant Michael M. (father) is the father of now six-year-old Andrea A., who is the subject of this dependency case. Father challenges the juvenile court's order issued at a Welfare and Institutions Code section 366.26[1] hearing that resulted in his parental rights being terminated. Father contends the juvenile court and the Merced County Human Services Agency (agency) failed to comply with the duty to inquire under the Indian Child Welfare Act (ICWA) and related California law because extended family members were not asked about the child's possible Indian ancestry.[2]

The agency concedes error and the parties have stipulated to an immediate limited remand for the purpose of complying with the inquiry provisions of ICWA. For the reasons discussed herein, we accept the agency's concession of ICWA error. Consistent with our decisions in *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*) and *In re E.C.* (2022) 85 Cal.App.5th 123 (*E.C.*), we conclude "the error is prejudicial because neither the agency nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue. ([*In re A.R.* (2021)] 11 Cal.5th [234,] 252–254.)" (*K.H.*, at p. 591; accord, *E.C.*, at pp. 157–158.) Accordingly, we accept the stipulation, conditionally reverse the juvenile court's finding that ICWA does not apply, and remand with directions.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In October 2021, the agency filed a petition alleging the child and her three siblings were described by section 300, subdivisions (b)(1), (g), and (j). The

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2]    "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[3]    The sole issue on appeal concerns ICWA; therefore, we primarily restrict our facts to those bearing on that issue.

allegations in the petition involved unsanitary home conditions and substance abuse by mother, Selena M. (mother). The petition further alleged that father had been incarcerated since 2019 and failed to provide care or support for the child. The agency's detention report indicated that mother and father had not been interviewed about potential Indian ancestry. The report also noted that the juvenile court previously found ICWA was not applicable as to father during dependency proceedings in 2014.

At the detention hearing held on October 12, 2021, mother and father were not present. The child was detained from mother's custody, and a combined jurisdiction and disposition hearing was set for November 3, 2021. The agency's jurisdiction and disposition report recommended that the allegations in the petition be found true and father be denied family reunification services pursuant to section 361.5, subdivision (e)(1) due to his incarceration. Family reunification services were not recommended for mother pursuant to section 361.5, subdivision (b)(1) because her whereabouts were unknown. The child's maternal aunt denied having any Indian ancestry, but the agency had been unable to speak with mother and father.

The agency sent notice to father at his correctional facility for the jurisdiction and disposition hearing. However, father refused to sign three separate "Prisoner's Statement Regarding Appearance at Hearing Affecting Parental Rights" forms (JV-451). Facility staff indicated that father did not know the child, and he did not want to be bothered. Mother and father were not present for the continued jurisdiction and disposition hearing held on January 19, 2022. The juvenile court sustained the allegations of the petition, denied family reunification services to mother and father, and set a section 366.26 hearing for May 11, 2022.

On April 20, 2022, the juvenile court vacated the section 366.26 hearing because section 361.5, subdivision (b)(1) required a status review to be completed in advance of a section 366.26 hearing The agency's report for the six-month review hearing recommended that a section 366.26 hearing be set due to mother's whereabouts

3.

remaining unknown. At the six-month review hearing, the court found that mother's whereabouts were unknown, and a section 366.26 hearing was set for September 12, 2022.

Father made his first appearance at the initial section 366.26 hearing by video, and he was appointed counsel. He indicated that he previously provided support for the child and considered her to be his child. The juvenile court noted the previous ICWA finding from the dependency proceedings in 2014, and it asked if father had learned any new information regarding the family's ancestry. Father responded that the paternal grandfather disclosed Navajo ancestry, but the paternal grandfather and great-grandfather were deceased. The paternal grandmother was identified as a person who might have more information about the family's possible Indian ancestry.

The juvenile court directed father to fill out ICWA-020 and ICWA-030 forms to provide information for a determination on the applicability of ICWA. The court noted that follow up should be completed to determine if his mother or another family member could provide any information regarding Indian ancestry, but it did not find that there was reason to believe the child might be an Indian child. The hearing was continued at the agency's request to allow for the completion of the agency's report. After additional continuances for the completion of the report and genetic testing, a continued section 366.26 hearing was held on January 9, 2023. Father was found to be the biological father of the child, and he reported a release date from custody in October 2023.

In its section 366.26 report, filed on March 22, 2023, the agency recommended that the juvenile court terminate the parental rights of mother and father and order a permanent plan of adoption for the child. The child was placed with a sibling, and their care provider was committed to providing a permanent plan of adoption for the child and sibling. The ICWA status section of the report documented the maternal grandmother's

denial of Indian ancestry, and the social worker left a voicemail for the paternal grandmother to inquire about ICWA on the date the report was filed.

On May 8, 2023, father's counsel filed a section 388 petition requesting an order of reunification services. The juvenile court scheduled an evidentiary hearing for the date of the pending section 366.26 hearing. After further continuances, the combined section 388 and section 366.26 hearing proceeded on May 16, 2023, with father present by video. Father testified in support of his request for reunification services, but the juvenile court ultimately denied his section 388 petition. After hearing additional testimony from father and argument from counsel, the juvenile court followed the agency's recommendation and terminated the parental rights of mother and father and selected a plan of adoption.

## DISCUSSION

Father contends there were extended family members, including the paternal grandmother, the agency could have interviewed regarding the child's Indian ancestry but did not. Therefore, he argues, the agency failed to fulfill its duty of inquiry under ICWA and the juvenile court erred in finding ICWA did not apply. The agency concedes this point and we concur.

### A. Applicable Law

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe … have a right to intervene" (25 U.S.C. § 1911(c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224, subd. (e)). An " 'Indian child' " is defined in ICWA as an

5.

unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

In every dependency proceeding, the agency and the juvenile court have an "affirmative and continuing duty to inquire whether a child is or may be an Indian child .…" (Cal. Rules of Court, rule 5.481(a);[4] see § 224.2, subd. (a); *In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.) The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child." (§ 224.2, subd. (a).) Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (§§ 224.2, subd. (b), 306, subd. (b).) The juvenile court has a duty at the first appearance of each parent to ask whether he or she "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) The court must also require each parent to complete form ICWA-020. (Rule 5.481(a)(2)(C).)

Next, a duty of further inquiry arises when the agency or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient information to determine that there is reason to know that the child is an Indian child." (§ 224.2, subd. (e).) As recently clarified by the Legislature, a "reason to believe" exists when the juvenile court or agency "has information suggesting that either the parent of

---

**4** All rule references refer to the California Rules of Court.

the child or the child is a member or may be eligible for membership in an Indian tribe." (*Id*., subd. (e)(1).)

If there is a reason to believe an Indian child is involved, the juvenile court or the agency "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) Further inquiry includes, but is not limited to, "[i]nterviewing the parents, Indian custodian, and extended family members," and contacting the Bureau of Indian Affairs, the State Department of Social Services, and the tribes and any other person who may have information. (§ 224.2, subd. (e)(2)(A)–(C).)

The final duty component arises when the court or agency has " 'reason to know' " the child is an Indian child. (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 567.) A "reason to know" exists if one of the following circumstances is present: "(1) A person having an interest in the child … informs the court that the child is an Indian child[;] [¶] (2) The residence … of the child [or] the child's parents … is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding … informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child … gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[; or] [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d)(1)–(6).)

If the juvenile court makes a finding that proper and adequate further inquiry and due diligence have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that the ICWA does not apply, subject to reversal if the court subsequently receives information providing reason to believe the child is an Indian child. If the court receives such information, it must direct the social worker or probation officer to conduct further inquiry. (§ 224.2, subd. (i)(2).)

## B. Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 142–143.) First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, at p. 143.) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence .…' " (*K.H.*, at p. 601.)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.] The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.] The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation]. '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143.)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the agency's inquiry was proper and adequate within the context of ICWA and California law, and whether the agency acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143; *Ezequiel G.* (2022) 81

8.

Cal.App.5th 984, 1004–1005.)  Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion.  (*K.H.*, at p. 601; accord, *E.C.*, at pp. 143–144; *Ezequiel G.*, at pp. 1004–1005.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard.  A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' "  [Citation.]  But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court[.]" ' "  [Citations.]  [¶]  While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' "  (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 143–144.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." '  [Citations.]  Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied."  (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 144.)

### C.  Analysis

Pursuant to its duty under section 224.2, the agency asked father whether he had any Indian heritage.  The child's father claimed potential Indian ancestry through a Navajo tribe, and he identified the paternal grandmother as an individual who may have additional information about the family's Indian ancestry.  The child's maternal aunt and grandmother both denied any Indian ancestry existed on the child's maternal side.  Based upon this information, the juvenile court found there was no reason to believe the child was an Indian child.  The agency's duty of inquiry, however, did not end with asking

9.

father and maternal relatives.  The agency was also required to attempt contact with paternal relatives having potential knowledge of Indian ancestry.

Extended family members include adults who are the children's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins.  (25 U.S.C. § 1903(2); § 224.1, subd. (c).)  There was at least one additional extended family member, a paternal grandmother, who the agency had been directed to contact in September 2022.  The only attempt to contact the paternal grandmother was documented six months later through a single voicemail on the date the section 366.26 report was filed.

Under the circumstances, we conclude the agency did not fulfill its statutory duty of inquiry.  (§ 224.2, subd. (b).)  As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence that the agency conducted an adequate, proper, and duly diligent inquiry, and its contrary conclusion was an abuse of discretion.  Because the failure in this case concerned the agency's duty of initial inquiry, only state law is involved.  "Where a violation is of only state law, we may not reverse unless we find that the error was prejudicial.  (Cal. Const., art. VI, § 13 ['No judgment shall be set aside … unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice'].)"  (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' "  (*K.H.*, *supra*, 84 Cal.App.5th at pp. 606–607.)

However, in *In re A.R.*, *supra*, 11 Cal.5th 234, the Supreme Court "recognized that while we generally apply a *Watson*[5] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm.  [Citation.]  In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ….' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.)  "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id*. at p. 609.)  Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*Id*. at p. 608.)  Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*Ibid*.)  Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the agency, or the juvenile court.  (*K.H.*, at p. 596.)

"[I]f the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609.)  Thus, "the relevant injury under ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian

---

5       *People v. Watson* (1956) 46 Cal.2d 818, 836.

child[, under a standard *Watson* analysis].  The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination.  It necessarily follows that [in the context of ICWA and consistent with *A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply.  Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this first step is critical if the rights of tribes under ICWA and California law are to be meaningfully safeguarded, as was intended by Congress and our state Legislature." (*Id*. at p. 591.)

As we explained in *K.H.*, "where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, *supra*, 84 Cal.App.5th at p. 610.)  Here, the agency's inquiry, limited only to father, a maternal aunt, and the maternal grandmother "fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law." (*Id*. at p. 620.)  "Where a record is silent or nearly silent with respect to an ICWA inquiry at the first step, a finding of harmlessness necessarily rests on speculation" and "is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes." (*Id*. at p. 611.)  Therefore, the error is prejudicial.

Before reversing or vacating a judgment based upon a stipulation of the parties, an appellate court must find "both of the following:  [¶] (A) There is no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal.  [¶]  (B) The reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement." (Code

Civ. Proc., § 128, subd. (a)(8).) Because this case would be subject to reversal to permit compliance with ICWA and corresponding California statutes and rules absent the parties' stipulation, a stipulated remand advances the interests identified by Code of Civil Procedure section 128, subdivision (a)(8). (See *In re Rashad H.* (2000) 78 Cal.App.4th 376, 379–382.) Thus, we accept the parties' joint stipulation for a limited remand for the purpose of complying with the inquiry provisions of ICWA and an immediate issuance of the remittitur.

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the agency to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, the court shall reinstate its ICWA finding. In all other respects, the court's order terminating father's parental rights is affirmed. By stipulation of the parties, the Clerk/Executive Officer of this court is directed to issue the remittitur immediately. (Rule 8.272(c)(1).)