Filed 2/9/24  In re Avery M. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| In re AVERY M., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.M.,<br><br>Defendant and Appellant. | F086445<br><br>(Super. Ct. No. 21CEJ300280-1)<br><br>**OPINION** |

### THE COURT*

APPEAL from an order of the Superior Court of Fresno County.  Amythest Freeman, Judge.

Gregory M. Chappel, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Plaintiff and Respondent.

---

\*  Before Levy, Acting P. J., Peña, J. and Snauffer, J.

Appellant A.M. (mother) appealed from the juvenile court's order terminating her parental rights to her now two-year-old daughter Avery M. (the child), who is the subject of this dependency case. Mother contended the juvenile court and the Fresno County Department of Social Services (department) failed to comply with their duty of inquiry under the Indian Child Welfare Act (ICWA). The department conceded that it failed to conduct an adequate inquiry into the potential Indian ancestry of the child, and it did not oppose remand for the limited purpose of conducting further ICWA inquiry.[1]

During the pendency of this appeal, mother's counsel informed this court of mother's death. We invited the department to file any objections to this court proceeding with the case and not treating it as moot, and counsel for the department indicated that it did not object to the appeal proceeding on its merits. On January 5, 2024, this court ordered that the appeal shall proceed on its merits and is not moot based on the death of the mother. Accordingly, we agree with the parties and conditionally reverse the juvenile court's order terminating parental rights and remand for proceedings to ensure ICWA compliance.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In July 2021, the department filed a dependency petition alleging the child was described by Welfare and Institutions Code section 300, subdivision (b)(1).[3] The allegations involved mother's substance abuse during her pregnancy with the child. After the child was taken into protective custody, the child's maternal great-aunt and maternal

---

[1] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[2] The sole issue on appeal concerns ICWA; therefore, we primarily restrict our facts to those bearing on that issue.

[3] All further statutory references are to the Welfare and Institutions Code.

aunt both indicated that they were interested in having the child placed in their homes.

The maternal great-aunt, maternal aunt, and maternal grandmother were all present for a team decision making meeting held on July 29, 2021. The department's detention report indicated that mother denied having Indian ancestry without any documentation that an inquiry was completed of maternal relatives that were in contact with the department.

At the detention hearing held on August 2, 2021, mother was present and appointed counsel. Mother confirmed her previous denial of Indian ancestry. The child was detained from mother's custody, and a jurisdiction and disposition hearing was set for September 1, 2021.

The department's jurisdiction and disposition report recommended that the allegations in the original petition be found true and family reunification services be provided to mother. There were no family reunification services recommended for the child's alleged father, C.V., whose whereabouts were unknown. The department had been unable to complete an inquiry regarding the alleged father's ancestry due to their inability to contact him. The child was placed in a resource family home while the maternal great-aunt was being assessed for placement.

At the jurisdiction and disposition hearing held on September 1, 2021, the juvenile court found the allegations in the original petition true, removed the child from mother's custody, and ordered family reunification services for mother. A six-month review hearing was set for February 23, 2022.

The department's report for the six-month review hearing recommended that mother's family reunification services be terminated and a section 366.26 hearing be set. The whereabouts of C.V. remained unknown despite the department's efforts to locate him. At the six-month review hearing, mother requested a contested hearing, which was eventually combined with the 12-month review hearing. On August 24, 2022, the

3.

juvenile court terminated mother's family reunification services and set a section 366.26 hearing for December 21, 2022.

The department's section 366.26 report, dated December 5, 2022, recommended that the juvenile court terminate the parental rights of mother and C.V. and order a permanent plan of adoption for the child. The child remained placed in the home of the same resource family since July 28, 2021, and the care providers were committed to providing a plan of adoption for the child.

The ICWA status section of the section 366.26 report detailed an additional interview with mother regarding her ancestry, and she continued to deny having any Indian ancestry in her family. The social worker also interviewed the child's maternal aunt, and she denied having Indian ancestry.[4] An attempt was made to obtain the maternal great-aunt's contact information from mother in October 2022, but she denied having any contact information for the maternal great-aunt or other maternal relatives. The whereabouts of C.V. continued to remain unknown. In December 2022, the maternal grandmother denied having any Indian ancestry when questioned by the social worker.

At a continued section 366.26 hearing held on March 1, 2023, mother was present and testified on her own behalf. On May 31, 2023, the juvenile court provided its ruling, and it proceeded to terminate the parental rights of mother and C.V. and selected a plan of adoption.

## DISCUSSION

Mother claimed the juvenile court and department failed to adequately discharge their duty of inquiry by failing to inquire of the child's extended family members regarding possible Indian ancestry. The department concedes this point, and we accept their concession.

---

[4] Another alleged father, L.M., came forward as a potential father for the child, but he was excluded by genetic testing. Both L.M. and his mother denied having any Indian ancestry when interviewed by the social worker.

4.

*A. Applicable Law*

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family.  (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.)  In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe … have a right to intervene" (25 U.S.C. § 1911(c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224, subd. (e)).  An " 'Indian child' " is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe.  (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

In every dependency proceeding, the department and the juvenile court have an "affirmative and continuing duty to inquire whether a child is or may be an Indian child .…"  (Cal. Rules of Court, rule 5.481(a);[5] see § 224.2, subd. (a); *In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.)  The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice."  (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child." (§ 224.2,

---

[5]     All further references to rules are to the California Rules of Court.

subd. (a).)  Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (§§ 224.2, subd. (b), 306, subd. (b).)  The juvenile court has a duty at the first appearance of each parent to ask whether he or she "knows or has reason to know that the child is an Indian child."  (§ 224.2, subd. (c).)  The court must also require each parent to complete form ICWA-020.  (Rule 5.481(a)(2)(C).)

Next, a duty of further inquiry arises when the department or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient information to determine that there is reason to know that the child is an Indian child." (§ 224.2, subd. (e).)  As recently clarified by the Legislature, a "reason to believe" exists when the juvenile court or department "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."  (*Id.*, subd. (e)(1).)

If there is a reason to believe an Indian child is involved, the juvenile court or the department "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable."  (§ 224.2, subd. (e).)  Further inquiry includes, but is not limited to, "[i]nterviewing the parents, Indian custodian, and extended family members," and contacting the Bureau of Indian Affairs, the State Department of Social Services, and the tribes and any other person who may have information. (§ 224.2, subd. (e)(2)(A)–(C).)

The final duty component arises when the court or department has " 'reason to know' " the child is an Indian child.  (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 567.)  A "reason to know" exists if one of the following circumstances is present:  "(1) A person having an interest in the child … informs the court that the child is an Indian child[;] [¶] (2) The residence … of the child [or] the child's parents … is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding … informs the court

6.

that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child … gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[; or] [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d)(1)–(6).)

If the juvenile court makes a finding that proper and adequate further inquiry and due diligence have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that the ICWA does not apply, subject to reversal if the court subsequently receives information providing reason to believe the child is an Indian child. If the court receives such information, it must direct the social worker or probation officer to conduct further inquiry. (§ 224.2, subd. (i)(2).)

### B. Standard of Review

Where the juvenile court finds ICWA does not apply to a child after completion of an initial inquiry, "[t]he finding implies that … social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.) We review the court's ICWA findings for substantial evidence. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.) We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance. (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 446.) The appellant "has the burden to show that the evidence was not sufficient to support the findings and orders." (*Ibid.*)

### C. Analysis

Pursuant to its duty under section 224.2, the department asked mother whether she had any Indian heritage. Mother denied having any knowledge of Indian ancestry in her family. The maternal aunt and maternal grandmother both denied having Indian ancestry when asked on the eve of the section 366.26 hearing. The maternal great-aunt expressed

7.

interest in having placement of the child at the outset of the proceedings, but there was no indication that an ICWA inquiry was directed toward her.

The department was required under section 224.2, subdivision (b) to ask available extended family members about the child's possible Indian ancestry. Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).) There was at least one additional extended family member, the maternal great-aunt, who was in contact with the department during the proceedings. The department either failed to ask the maternal great-aunt about Indian ancestry or did not document it. The only additional attempt to contact the maternal great-aunt regarding Indian ancestry was made in October 2022 when mother denied having any contact information for her or any other maternal relatives.

Under the circumstances, we conclude the department did not fulfill its statutory duty of inquiry. (§ 224.2, subd. (b).) As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence that the department conducted an adequate, proper, and duly diligent inquiry, and its contrary conclusion was an abuse of discretion. Because the failure in this case concerned the department's duty of initial inquiry, only state law is involved. "Where a violation is of only state law, we may not reverse unless we find that the error was prejudicial. (Cal. Const., art. VI, § 13 ['No judgment shall be set aside … unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice'].)" (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it

reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*In re K.H.* (2022) 84 Cal.App.5th 566, 606–607 (*K.H.*).)

However, in *In re A.R.* (2021) 11 Cal.5th 234, the Supreme Court "recognized that while we generally apply a *Watson*[6] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ….' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id*. at p. 609.) Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*Id*. at p. 608.) Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*Ibid*.) Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the department, or the juvenile court. (*Id*. at p. 596.)

"[I]f the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609.) Thus, "the relevant injury under

---

**6** *People v. Watson* (1956) 46 Cal.2d 818, 820.

9.

ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian child[, under a standard *Watson* analysis]. The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination. It necessarily follows that [in the context of ICWA and consistent with *A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply. Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this first step is critical if the rights of tribes under ICWA and California law are to be meaningfully safeguarded, as was intended by Congress and our state Legislature." (*Id*. at p. 591.)

As we explained in *K.H.*, "where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, *supra*, 84 Cal.App.5th at p. 610.) Here, the department's inquiry "fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law." (*Id*. at p. 620.) "Where a record is silent or nearly silent with respect to an ICWA inquiry at the first step, a finding of harmlessness necessarily rests on speculation" and "is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes." (*Id*. at p. 611.) Therefore, the error is prejudicial.

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the department to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5). If, after determining that an adequate

10.

inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall proceed in compliance with ICWA and related California law.  If the court instead finds that ICWA does not apply, the court shall reinstate its ICWA finding.  In all other respects, the court's order terminating mother's parental rights is affirmed.