Filed 7/19/24  In re X.C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re X.C., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENTT OF HUMAN SERVICES,  Plaintiff and Respondent,  v.  E.C.,  Defendant and Appellant. | F087580  (Super. Ct. No. JD143121-00)  **OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Gregory M. Chappel, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Elizabeth M. Giesick, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Franson, Acting P. J., Peña, J. and Smith, J.

Appellant E.C. (mother) is the mother of X.C. (the child), who is the subject of this dependency case. Mother challenges the juvenile court's order issued at a Welfare and Institutions Code section 366.26[1] hearing that resulted in her parental rights being terminated. Mother contends the court and the Kern County Department of Human Services (department) failed to comply with their duty of inquiry under the Indian Child Welfare Act (ICWA). The department concedes that it failed to conduct an adequate inquiry into the potential Indian ancestry of the child, and it does not oppose remand for the limited purpose of conducting further ICWA inquiry.[2] We agree with the parties and conditionally reverse the court's order terminating parental rights and remand for proceedings to ensure ICWA compliance.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In March 2022, the child and his two older siblings, L.C. and I.C., were taken into protective custody by law enforcement. Mother was arrested on various charges after the execution of a search warrant. An investigating social worker spoke with mother shortly after the removal, and mother claimed Indian ancestry through an unknown tribe. The department filed a juvenile dependency petition alleging the child was described by section 300, subdivision (b). The allegations involved mother's ongoing substance abuse.

At the initial detention hearing held on March 8, 2022, mother was present and appointed counsel. The juvenile court inquired of mother regarding Indian ancestry. Mother believed that she had Indian ancestry through the child's deceased great-great-grandmother, but she did not know the identity of the tribe. The maternal

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]    "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[3]    The sole issue on appeal concerns ICWA; therefore, we primarily restrict our facts to those bearing on that issue.

great-grandmother, G.T., was identified as a person with more information about the ancestry, and contact information was provided for her on mother's Parental Notification of Indian Status form (ICWA-020).

The juvenile court made temporary findings to detain the child and his siblings from mother. The hearing was continued to March 10, 2022, at mother's request. At the continued detention hearing, the child was detained from mother's custody and a combined jurisdiction and disposition hearing was set for April 26, 2022. The court also recognized F.C. (father) as the child's presumed father, and the department was directed to conduct further inquiry regarding possible Indian ancestry.

On April 13, 2022, mother informed the department that her family's ancestry was through the Apache tribe, and she denied that any of her family members were enrolled members of the tribe. The maternal great-grandmother also identified the Apache tribe as her grandparents' ancestry, but she was unable to provide any names or birthdates for her grandparents. The department sent Notice of Child Custody Proceeding for Indian Child form (ICWA-030) to the relevant Apache tribes. None of the tribes responded that the child was either a member or eligible for membership in their tribe.

The department's jurisdiction report, dated April 22, 2022, recommended that the allegations in the original petition be found true. On April 26, 2022, the juvenile court found the allegations in the original petition true, and the disposition hearing was continued to May 25, 2022.

The disposition report, dated May 24, 2022, recommended that the child remain in out-of-home care with family reunification services provided to mother and father. The child was placed with I.C. in a resource family home. L.C. informed a family finding social worker that she would like to be placed with the maternal great-grandmother, G.T. I.C. identified her maternal uncle, Gabriel T., as a potential placement option.

Mother was raised by the child's maternal great-grandmother. The maternal grandfather was deceased, and mother did not have contact with the maternal

3.

grandmother. Mother and father had been married since 2011, but father was deported to Mexico in 2017. Father was currently living in Mexico, and he was provided with notice of the upcoming disposition hearing. Father denied having any Indian ancestry when contacted by a paralegal for the department.

The maternal uncle, E.B., and his spouse, J.H., were interested in placement of the child and his siblings. Maternal great-grandmother G.T. also expressed a desire to take placement of the child and his siblings. G.T. explained that she was currently living in a senior living home, and she previously lived "from motel to motel" with mother and her children. Attempts were made to reach the child's paternal grandmother in Mexico, but she could not be reached by phone. The family finding social worker sent letters to several maternal relatives with information on relative placement. J.H. and G.T. were provided with information on the resource family approval process, but none of the relatives had submitted an application at the time of the disposition report.

On May 25, 2022, the juvenile court found that ICWA was not applicable because there was no reason to believe or know the child was an Indian child. The disposition hearing was continued due to a late report at mother's request. At the continued disposition hearing held on June 9, 2022, mother was present and represented by counsel. After all parties submitted, the child was removed from the parents' custody and family reunification services were ordered for mother and father. A six-month review hearing was set for December 9, 2022.

The report prepared for the six-month review hearing recommended that mother's family reunification services be continued and father's family reunification services be terminated. The paternal grandmother contacted the social worker on July 8, 2022, to explain that father was in a rehabilitation center in Mexicali. She expressed her interest in placement and visitation with the child and his siblings. The ICWA section of the report included the juvenile court's previous finding that ICWA was not applicable without any additional information.

At the six-month review hearing held on December 9, 2022, mother's family reunification services were continued and father's family reunification services were terminated. A 12-month review hearing was scheduled for April 26, 2023. The 12-month review report, dated April 14, 2023, recommended that mother's family reunification services be terminated and the setting of a section 366.26 hearing for the child. A permanent plan of adoption or guardianship was not suitable for the child's siblings, and the siblings were recommended to remain in foster care with a permanent plan of placement with a fit and willing relative. On April 26, 2023, family reunification services were terminated for mother, and a section 366.26 hearing was set for the child on August 24, 2023.

The department's section 366.26 report, dated August 11, 2023, recommended that the juvenile court terminate the parental rights of mother and father and order a permanent plan of adoption for the child. The ICWA section of the report provided no additional information regarding ICWA. In a subsequent report, dated January 29, 2024, the department provided additional information on its ICWA inquiry of the child's paternal family. The social worker mailed letters about information on relative placement to paternal relatives on January 25, 2024. A voice message was left for a paternal aunt, M.C., after she failed to answer the social worker's phone call. The paternal grandmother denied that there was any Indian ancestry in their family.

At a continued section 366.26 hearing held on February 5, 2024, the juvenile court terminated parental rights and selected a plan of adoption for the child. The court also found that there was no reason to know the child was an Indian child.

## DISCUSSION

Mother contends the juvenile court and department failed to adequately discharge their duty of initial inquiry by failing to inquire of the child's extended family members regarding possible Indian ancestry. The department concedes this point, and we accept its concession.

### A. Applicable Law

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe … have a right to intervene" (25 U.S.C. § 1911(c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224, subd. (e)). An " 'Indian child' " is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4), (8); see § 224.1, subd. (a) [adopting federal definitions].)

In every dependency proceeding, the department and the juvenile court have an "affirmative and continuing duty to inquire whether a child is or may be an Indian child .…" (Cal. Rules of Court, rule 5.481(a);[4] see § 224.2, subd. (a); *In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.) The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child." (§ 224.2, subd. (a).) Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others

---

**4**      All further references to rules are to the California Rules of Court.

who have an interest in the child whether the child is, or may be, an Indian child. (§§ 224.2, subd. (b), 306, subd. (b).) The juvenile court has a duty at the first appearance of each parent to ask whether he or she "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) The court must also require each parent to complete a Parental Notification of Indian Status form (ICWA-020). (Rule 5.481(a)(2)(C).)

Next, a duty of further inquiry arises when the department or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient information to determine that there is reason to know that the child is an Indian child .…" (§ 224.2, subd. (e).) As recently clarified by the Legislature, a "reason to believe" exists when the court or department "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).)

If there is a reason to believe an Indian child is involved, the juvenile court or the department "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) Further inquiry includes, but is not limited to, "[i]nterviewing the parents, Indian custodian, and extended family members," and contacting the Bureau of Indian Affairs, the State Department of Social Services, and the tribe and any other person who may have information. (§ 224.2, subd. (e)(2)(A)–(C).)

The final duty component arises when the juvenile court or department has " 'reason to know' " the child is an Indian child. (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 567.) A "reason to know" exists if one of the following circumstances is present: "(1) A person having an interest in the child … informs the court that the child is an Indian child[;] [¶] (2) The residence … of the child [or] the child's parents … is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding … informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child … gives the court reason to know that the child is an

7.

Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[; or] [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d)(1)–(6).)

If the juvenile court makes a finding that proper and adequate further inquiry and due diligence have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that ICWA does not apply, subject to reversal if the court subsequently receives information providing reason to believe the child is an Indian child. If the court receives such information, it must direct the social worker or probation officer to conduct further inquiry. (§ 224.2, subd. (i)(2).)

### B. Standard of Review

Where the juvenile court finds ICWA does not apply to a child after completion of an initial inquiry, "[t]he finding implies that … social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.) We review the court's ICWA findings for substantial evidence. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.) We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance. (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 446.) The appellant "has the burden to show that the evidence was not sufficient to support the findings and orders." (*Ibid*.)

### C. Analysis

Pursuant to its duty under section 224.2, the department asked mother and father whether they had any Indian heritage. Father denied having any knowledge of Indian ancestry in his family, and the paternal grandmother also denied having Indian ancestry. However, mother disclosed possible Indian ancestry through the Apache tribe, and the maternal great-grandmother confirmed this potential ancestry. The child's maternal

uncle, E.B., and his spouse, J.H., expressed interest in being considered for placement of the child early in the proceedings.

The department was required under section 224.2, subdivision (b) to ask available extended family members about the child's possible Indian ancestry. Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).) There was at least one additional extended family member, the maternal uncle E.B., who was in contact with the department during the proceedings. The department either failed to ask the maternal uncle about Indian ancestry or did not document it.

Under the circumstances, we conclude the department did not fulfill its statutory duty of inquiry. (§ 224.2, subd. (b).) As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence that the department conducted an adequate, proper, and duly diligent inquiry, and its contrary conclusion was an abuse of discretion. Because the failure in this case concerned the department's duty of initial inquiry, only state law is involved. "Where a violation is of only state law, we may not reverse unless we find that the error was prejudicial. (Cal. Const., art. VI, § 13 ['No judgment shall be set aside … unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice'].)" (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*In re K.H.* (2022) 84 Cal.App.5th 566, 606–607 (*K.H.*).)

However, in *In re A.R.* (2021) 11 Cal.5th 234, the Supreme Court "recognized that while we generally apply a *Watson*[5] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ….' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id*. at p. 609.) Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*Id*. at p. 608.) Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*Ibid*.) Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the department, or the juvenile court. (*Id*. at p. 596.)

"[I]f the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609.) Thus, "the relevant injury under ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian

---

5    *People v. Watson* (1956) 46 Cal.2d 818, 820.

child [under a standard *Watson* analysis]. The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination. It necessarily follows that [in the context of ICWA and consistent with *In re A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply. Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this step is critical if the rights of tribes under ICWA and California law are to be meaningfully safeguarded, as was intended by Congress and our state Legislature." (*K.H.*, at p. 591.)

As we explained in *K.H.*, "where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, *supra*, 84 Cal.App.5th at p. 610.) Here, the department's inquiry "fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law …." (*Id*. at p. 620.) "Where a record is silent or nearly silent with respect to an ICWA inquiry at the first step, a finding of harmlessness necessarily rests on speculation" and "is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes." (*Id*. at p. 611.) Therefore, the error is prejudicial.

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the court with directions to order the department to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e) and rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court

11.

shall proceed in compliance with ICWA and related California law.  If the court instead finds that ICWA does not apply, the court shall reinstate its ICWA finding.  In all other respects, the court's order terminating mother and father's parental rights is affirmed.